**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAROLD COHEN,<br><br>    Petitioner,<br><br>    v.<br><br>MONICA RECKTENWALD, Warden, et al.,<br><br>    Respondents. | CIVIL ACTION NO. 3:13-CV-2044<br><br>(JUDGE CAPUTO)<br><br>(MAGISTRATE JUDGE MEHALCHICK) |

**MEMORANDUM**

Presently before the Court is Magistrate Judge Karoline Mehalchick's Report and Recommendation ("R & R") (Doc. 9) to Petitioner Harold Cohen's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Also before me are Petitioner's Objection to the R & R (Doc. 10) and Respondent's Memorandum of Law in response to the petitioner's Objection (Doc. 11).

Respondent Monica Recktenwald is the Warden at the Allenwood Federal Correctional Institution ("FCI Allenwood") in White Deer, Pennsylvania, where Cohen was incarcerated when he filed this petition. Cohen alleges that his equal protection and due process rights were violated in connection with a disciplinary hearing that resulted in him losing forty (40) days of good time credit. In her R & R, Magistrate Judge Mehalchick recommends that the Petition be dismissed without prejudice to any right Petitioner may have to reassert his civil rights claims in a properly filed civil rights action. (Doc. 9, 7.) Respondent Recktenwald asks this Court to adopt the Magistrate Judge's R & R in full.

Because given the broad discretion federal courts give to prison officials in administering disciplinary hearings, Respondent has demonstrated that the prison provided Mr. Cohen with adequate due process, there was evidence to support the decision of the prison's Disciplinary Hearing Officer, and Petitioner did not demonstrate an Equal Protection Clause violation, Magistrate Judge Mehalchick's R & R will be *adopted*.

**I. Background**

**A. Factual Background**

This petition arises out of events that occurred while Petitioner Harold Cohen was incarcerated at FCI Allenwood. The facts as set forth in the Petition are as follows:

On January 18, 2012, Cohen, along with another inmate, Ross, was required to give a urine specimen. (Doc. 5, 2.) Cohen and Ross were told that their specimens had tested positive for opiates. (*Id.*) Cohen contends he repeatedly asked to view the form with his specimen number and the test results, but was denied, and alleges that when he kept asking, a correctional officer threatened to investigate him "until next Christmas." (*Id.*)

Cohen and Inmate Ross were escorted to the Segregated Housing Unit ("SHU"). (*Id.*) While Cohen was in the SHU, a Correctional Officer ("CO") interviewed him and explained that he was under investigation because his urine had tested positive for prohibited narcotics, but he would be released if a second test came back negative. (*Id.* at 3.) He explained that if the second sample tested positive in the instant test, it would be sent to a laboratory for confirmation, but if it tested negative, Cohen would be released back into the regular prison population and receive no further punishment. (*Id.*)

On January 23, 2012, Cohen and Inmate Ross submitted second urine samples. (*Id.*) Cohen was allowed to watch the instant test, and the sample was never taken out of his sight. (*Id.*) The test came back negative for prohibited narcotics, and Cohen initialed a "Urine Sample Test Form" in which his urine was listed as negative. Cohen was told he would soon be released from the SHU. (*Id.*)

However, Cohen's release was delayed, and when he inquired why, he was told that his urine sample had been sent to the lab for confirmation of the negative results because of the initial positive test, and to test for THC (tetrahydrocannabinol). (*Id.*) On January 27, Cohen learned that the outside laboratory had notified the prison that his urine tested

2

positive for "Cannabinoids (THC Metabolite)." (*Id.*) Petitioner received a copy of the Incident Report, which charged him with violating Prohibited Acts Code 112, Use of any Narcotics not Prescribed by Medical Staff. (*Id.;* Doc. 7-1, 23.) Cohen requested staff representation, and Counselor Flewelling acted in this capacity. (*Id.* at 4.) Cohen's request that Inmate Ross appear as a witness was denied. (*Id.*)

On June 25, Cohen received a disciplinary hearing presided over by a Discipline Hearing Officer ("DHO"). (*Id.*) He was found guilty of Prohibited Act 112, and received the following sanctions: thirty (30) days of disciplinary segregation, another 30 to be suspended after 180 days of good behavior, disallowance of forty (40) days of good time credits, and the loss of visitors for one (1) year, followed by another year of non-contact visits. (*Id*.)

Cohen appealed the DHO's findings to the Regional Director for Administrative Remedies, claiming an abuse of discretion, and due process and equal protection violations. (*Id.* at 5.) Cohen sent an Appeal Request to the Central Administrative Remedy Office in Washington, D.C., which upheld the Regional Director's decision that his rights were not violated. (*Id.*) His petition filing included a copy of that appeal and the reply. (Doc. 5.) Parties agree that Petitioner exhausted his administrative remedies. (Doc. 7, 2.)

Respondent's asserted facts in the Response to the Petition (Doc. 7) are largely the same as Petitioner's factual assertions. Respondent asserts that the first sample of Cohen's urine, which tested positive for prohibited substances, could not be tested a second time because it leaked on the way to the outside laboratory. (Doc. 7, 3.) Thus, they sent Cohen's second sample to be tested a second time even though it had a negative result because the first positive result could not be confirmed. (*Id.*)

Respondent contends that in accordance with policy, Cohen received and signed an "Inmate Rights at Discipline Hearing" form and the "Notice of Discipline Hearing Before the DHO" form before his hearing. (*Id*. at 4; Doc. 7-1, 22, 23.) Respondent asserts that prison

3

officials determined that Cohen could not call Inmate Ross as a witness at his hearing because he would only be able to testify as to what happened during the initial urine sampling, which was not relevant to the issue at hand.  (Doc. 7, 5.)

In support of these assertions, Respondent put forth the declaration of Joseph McCluskey, a Federal Bureau of Prisons (BOP) Senior Attorney.  (Doc. 7-1, *Resp't Ex. 1*.) Attached to this declaration were: a series of records pertaining to Petitioner's urine samples, Petitioner's public inmate data, an incident report, copies of the Inmates Rights at Discipline Hearing and Notice of Discipline Hearing Before the DHO forms, the DHO report, Petitioner's disciplinary history, and the "Regional and Central Office Administrative Remedy Appeals and Responses."  (Doc. 4-1, 5-49, *Resp't Ex. 1, Att. A-K*.)

**B. Procedural Background**

Petitioner Cohen filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on July 19, 2013.  (Doc. 1.)  In his Petition and accompanying Memorandum of Law (Doc. 5), he challenged the duration of his confinement as a result of having good time credits taken away from him as a sanction for violating a prison rule: Code 112, Use of any Narcotics not Prescribed by Medical Staff.  Cohen asserted that the prison's disciplinary process and resulting sanctions denied him equal protection and due process of the law. He requested that the Court restore his good conduct time and expunge his record.

Petitioner takes issue with a number of elements of the process he received.  First, he asserts that his negative urine sample should not have been sent to an outside laboratory for confirmation, and prison officials' decision to send it was arbitrary and capricious, not based on any authority or policy.  He contends that prison staff should not have sent his urine specimen for confirmation since the initial test was negative, and the BOP's stated procedure is that *positive* tests will be sent out for confirmation.

Second, at his DHO hearing, when he asked why his negative results were sent for

4

confirmation, the DHO stated that the decision was not based on any procedural policy and no documentary evidence was provided to support the decision. Third, Cohen argues that the decision to not let him call Inmate Ross as a witness violates his right to procedural due process. He also takes issue with his staff representative's claim that there were no discrepancies in the disciplinary process. Finally, he argues that the decision to send his negative urine sample for confirmation and not that of Inmate Ross constitutes a violation of the Equal Protection Clause of the U.S. Constitution. (Doc. 2 at 5.)

On October 22, 2013, Magistrate Judge Mehalchick signed an Order to Show Cause requiring Respondents to show cause why Cohen should not be granted a Writ of Habeas Corpus (Doc. 6). On November 12, Respondent Recktenwald filed a Response (Doc. 7) contending that the DHO met evidentiary and due process requirements in conducting Cohen's hearing, did not violate the Equal Protection Clause, and imposed appropriate sanctions. (*Id.*) Cohen filed a Traverse Motion in reply to the Response (Doc. 8).

On April 2, 2014, Magistrate Judge Mehalchick issued an R & R (Doc. 9). On April 24, Cohen filed an Objection to the R & R (Doc. 10). On May 5, Respondent Recktenwald filed a Memorandum of Law in opposition to Cohen's Objection to the R & R (Doc. 11).

## II. Legal Standard

Where objections to the Magistrate Judge's R & R are filed, the Court must conduct a *de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). This only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting a *de novo review*, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the

extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### III. Discussion

As noted, Magistrate Judge Mehalchick recommends that the petition be dismissed without prejudice, because for the purposes of review under 28 U.S.C. § 2241, the prison did not violate Cohen's rights to due process or equal protection. (Doc. 9, 7-8.) In his objections (Doc. 10), Petitioner Cohen argues that the R & R should be rejected because his rights were indeed violated, and the Magistrate Judge improperly certified all of the claims put forth by the Government in this case as facts, while disregarding the relevant facts he put forth. (Doc. 10, 2.)

Specifically, he contends that the R & R should not have taken as fact that the first sample leaked and that is why prison officials sent the negative urine sample to the lab for confirmation (which they do not typically do), a claim that the Government makes without offering outside evidence or documentation. (Doc. 10, 2.) He also contends that the Magistrate Judge did not address the evidence he put forth that the prison's Program Statement 6060.08, Urine Surveillance and Narcotics Identification, Procedure §550.31(c) states that "an initial positive test is confirmed by a second test before it is reported to the Institution." (*Id*. at 2-3.) He contends that the policy specifically states that only an initial *positive* test is confirmed by a second test, and does not say that a negative test is confirmed. He argues that the prison acted arbitrarily and committed an abuse of discretion when they sent his negative sample for confirmation. (*Id.* at 4.) He also contends that this

was an act of discrimination in violation of the Equal Protection Clause because the prison did not send the negative urine sample of Inmate Ross to the outside lab for confirmation. (*Id.*)  Furthermore, he argues that the R & R did not address his contention that the prison did not again test his second sample urine in order to confirm the positive test result, in violation of Procedure §550.31(c), stated above.

Petitioner also objects to Magistrate Judge Mehalchick's conclusion that treating one prisoner differently from one other prisoner does not amount to evidence of discriminatory treatment in violation of the right to equal protection.  This conclusion is well-based in prior judicial decisions and case law.  *See, e.g., Gilliam v. Holt*, 188 F. App'x 79, 81 (3d Cir. 2006) (applying to the prisoner discipline context *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987)); *Tapp v. Proto*, 718 F. Supp. 2d 598, 625 (E.D. Pa. 2010) *aff'd*, 404 F. App'x 563 (3d Cir. 2010); *Millard v. Hufford*, 415 F. App'x 348, 350 (3d Cir. 2011) (holding that an inmate who was treated more harshly than others did not establish an equal protection claim without evidence that his treatment was the result of discrimination). Proving purposeful discrimination is necessary to make out an equal protection claim.  *Millard*, 415 F. App'x at 350.  Cohen does not put forth any evidence of a discriminatory purpose behind the prison officials' decisions beyond the difference in treatment.

With respect to Cohen's due process claim, prisoners are guaranteed certain due process protections where a prison disciplinary hearing may result in the loss of good time credits, since such credits are considered a liberty interest.  *Wolff v. McDonnell,* 418 U.S. 539, 564-5 (1974).  *See also Queen v. Miner*, 530 F.3d 253, 254 n. 2 (3d Cir. 2008) (per curiam) (holding that a disciplinary action resulting in a loss of good time credits is actionable under 28 U.S.C. § 2241 because it affects a sentence's duration).  Since Cohen's sanctions included the loss of good conduct time, this Court must review the process afforded to him in the disciplinary hearing.

A prison disciplinary proceeding is not treated the same as a criminal prosecution, and the entire "panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to a prison disciplinary proceeding implicating the infringement of a cognizable liberty interest, such as the loss of good time credits, the minimum due process protections afforded an inmate must include: (1) the right to appear before an impartial decision-making body; (2) twenty-four hours advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," *Id.* at 570; and (5) a written statement by the fact-finder citing the evidence relied upon and reasons for the disciplinary action taken. *Id.* at 563–71.

There is limited judicial review of institutional due process to determine if prison officials' disciplinary procedures and decisions are arbitrary or capricious. *Id.* at 556. Upon review of the facts in this case, prison officials have demonstrated that they met these requirements, particularly in light of the broad discretion accorded to prison officials. While the DHO may not have given Cohen a meaningful opportunity to call his requested inmate witness, I give deference to the DHO's decision that it was not relevant to the proceedings.

Where the due process requirements of *Wolff* are met, "some evidence in the record" must support a DHO's decision. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454–56 (1985); *see also Young v. Kann,* 926 F.2d 1396, 1402–03 (3d Cir. 1991) (applying *Hill* to federal prisoner due process challenges to prison disciplinary proceedings). Furthermore, federal regulations set out that a DHO's decision must be "based on at least some facts" and "based on the greater weight of the evidence." 28 C.F.R. § 541.8(f).

Petitioner Cohen objects to Magistrate Judge Mehalchick's determination that the facts stated by Respondent are true, and argues that thus, there is not enough evidence to support the DHO's decision. Particularly, he disagrees that there is evidence that his first sample leaked, and that is why they sent his negative sample to be tested a second time. However, even without this evidence, viewing only the facts to which the parties agree, based on the greater weight of the evidence, there is "some evidence" to support the conclusion of the DHO that Petitioner violated Prohibited Act 112, Use of any Narcotics not Prescribed by Medical Staff. Mr. Cohen's urine tested positive for prohibited narcotics twice. It is not relevant, as Petitioner contends, that he tested positive for two different narcotics. He also does not put forth any competing evidence.

Petitioner's objections focus on the fact that the prison did not adhere to its stated policies. However, prison officials met the requirements set out by the Supreme Court in *Wolff,* had enough evidence to find Cohen guilty of the offense with which he was charged, and were not motivated by discrimination. Thus, while they may arguably have deviated from stated policies, they still did not violate his equal protection and due process rights.

## IV. Conclusion

For the above reasons, Magistrate Judge Mehalchick's Report and Recommendation is *adopted*. An appropriate order follows.

October 24, 2014                                                            /s/ A. Richard Caputo
Date                                                                                  A. Richard Caputo
                                                                                         United States District Judge